AMIN WASSERMAN GURNANI, LLP
William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
Cole Kroshus, Bar No. 345790
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:    (213) 933-2330
Fax:    (312) 884-7352
wcole@awglaw.com
morr@awglaw.com
ckroshus@awglaw.com

Attorneys for Defendant Slate Craft Goods, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA SICAIROS and MARNIE SCHULMAN, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SLATE CRAFT GOODS, INC., a Delaware corporation,<br><br>Defendant. | Case No.:  2:25-cv-10617-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SLATE CRAFT GOODS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:  February 17, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 590<br><br>Hon. Pedro V. Castillo |

# **TABLE OF CONTENTS**

Page

## **CONTENTS**

I.    INTRODUCTION ..................................................................................1

II.   BACKGROUND ..................................................................................1

    A.    Plaintiffs' Alleged Purchases. ...................................................1

    B.    The FDA's Regulatory Structure. ..............................................2

    C.    Plaintiffs' Claims .....................................................................6

III.  LEGAL STANDARDS ........................................................................7

IV.   ARGUMENT ........................................................................................8

    A.    Plaintiffs Do Not Have Standing to Assert Claims Regarding Products They
Do Not Allege to Have Purchased. .............................................8

    B.    Plaintiffs Fail to Plausibly Allege that the Products Misbranded are Under
the FDCA.................................................................................10

        1.   Plaintiffs do not plead factual content supporting their legal
conclusion that the protein in the Products is a "Class I" nutrient. ...11

        2.   Plaintiff Schulman does not plausibly allege that the product she
purchased (Classic Chocolate) was misbranded. ................................12

        3.   Plaintiffs do not allege any plausible claims regarding the Vanilla
Latte and Salted Caramel Products. .....................................................14

    C.    Plaintiffs Fail to State any Claim for Equitable Restitution Because They
Fail to Plead Facts Establishing Their Legal Remedies Are Inadequate. ....14

V.    CONCLUSION....................................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2
Page

3

## CASES

4
**State Cases**

5
*Bank of the West v. Sup. Ct. (Industrial Indem. Co.)*, 2 Cal.4th 1254

6
   (1992)..................................................................................................14

7
*Chapman v. Skype*, 220 Cal. App. 4th 217 (2013).......................................10

8
*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003)..........14

9
*Tobacco Cases II*, 240 Cal. App. 4th 779 (2015) .........................................16

10
**Federal Cases**

11
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................7, 11, 13

12
*Axelrod v. Lenovo (United States) Inc.*, No. 21-cv-06770-JSW, 2022 WL

13
   976971, (N.D. Cal. Mar. 31, 2022) ......................................................17, 18

14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................7

15
*Clevenger v. Welch Foods Inc.*, No. SACV 20-01859-CJC, 2022 WL

16
   16964009, (C.D. Cal. Feb. 25, 2022) ..........................................................9

17
*Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962)..........................................19

18
*Dollar Systems, Inc. v. Avacar Leasing Systems, Inc.*, 890 F.2d 167 (9th

19
   Cir. 1989).....................................................................................................19

20
*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S.Ct. 2759, 171

21
   L.Ed.2d 737 (2008).......................................................................................9

22
*Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 8101923,

23
   (N.D. Cal. Nov. 21, 2023) ...........................................................................15

24
*Gradney v. Polar Beverages,* 797 F. Supp. 3d 1016 (N.D. Cal. 2025) ....................15, 18

25
*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) .......................15

26
*Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308 (9th Cir. 2022) .................15, 16, 17

27
*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D. Cal. 2012) ............8

28
*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .........................7, 8

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ............................. 8

*Lee v. Nature's Path Food, Inc.*, No. 23-cv-00751-H-MSB, 2023 WL
7434963, (S.D. Cal. Nov. 9, 2023) ..................................................................... 10

*LeGrand v. Abbott Labs.*, No. 22-cv-05815-TSH, 2025 WL 2323352,
(N.D. Cal. Aug. 12, 2025) ...................................................................................... 16

*Lewis v. Casey*, 518 U.S. 343 (1996) ......................................................................... 9

*Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901 (C.D. Cal. 2021) ........................... 9, 10

*McConnon v. Kroger Co.*, No. 2:24-cv-02601-SB-E, 2024 WL 3941340,
(C.D. Cal. June 21, 2024) ....................................................................................... 10

*Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2018 WL
510139, (N.D. Cal. Jan. 23, 2018) ....................................................................... 17

*Oh v. Fresh Bellies, Inc.*, No. CV 24-5417, 2024 WL 4500727, (C.D.
Cal. Oct. 15, 2024) ............................................................................................. 9, 10

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................ 15

*Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL
2830663, (N.D. Cal. Mar. 28, 2024) ..................................................................... 17

*Qualcomm Antitrust Litigation*, No. 17-md-02773-JSC, 2023 WL
6301063, (N.D. Cal. Sept. 26, 2023) ..................................................................... 17

*Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095, (N.D.
Cal. May 31, 2011) ............................................................................................... 17

*Ringler v. J.M. Smucker Company*, 783 F. Supp. 3d 1229 (C.D. Cal.
2025) ........................................................................................................................ 9

*Rosenwald v. Kimberly -Clark Corp.*, 152 F.4th 1167 (9th Cir. 2025) ..................... 16

*Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094 (9th Cir. 2025) .............. 3, 10, 12, 13

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ............................................... 11

*Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020). ................. 15, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, S. Ct. 2499
(2007) ....................................................................................................................... 8

TABLE OF AUTHORITIES

*Valenta v. Naked Whey, Inc.*, No. 25-cv-1543-RSH-DEB, 2025 WL 3240806, (S.D. Cal. Nov. 20, 2025).................................................................9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)....................................7, 8

*Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877 (C.D. Cal. 2013).......................8

*Watkins v. MGA Entertainment, Inc.*, 550 F.Supp.3d 815 (N.D. Cal. 2021).........................................................................................................................7

*Weiss v. Trader Joe's Co.*, 838 F. App'x 302 (9th Cir. 2021).........................................10

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).....................................10

*Wright v. Old Gringo, Inc.*, No. 23-55791, 2025 WL 1912362, (9th Cir. May 23, 2025).........................................................................................................17

## STATUTES

21 C.F.R. § 101.9 ..................................................................2, 3, 4, 5, 6, 11, 14

21 U.S.C. § 343 ...................................................................................................3

Cal. Bus. & Prof. Code § 17200 .......................................................................7

Cal. Bus. & Prof. Code § 17500 .......................................................................7

Cal. Civ. Code § 1750 ........................................................................................6

Cal. Civ. Code § 1781 ......................................................................................14

Cal. Comm. Code § 2714 .................................................................................15

FDCA, 21 U.S.C. § 301. ....................................................................................2

Fed. R. Civ. P. 8 .................................................................................................7

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Slate Craft Goods, Inc. ("Slate") markets various Slate Protein Milk Shake and Slate Ultra Protein Milk Shake products. Plaintiffs Claudia Sicairos and Marnie Schulman allege that the products contain less protein than stated on the packaging. Slate disputes that allegation, disputes Plaintiffs' alleged test results, and stands behind the products' 20 grams and 30 grams protein claims. But as this is the pleading stage, even accepting the Plaintiffs' alleged test results, their Complaint is defective in several ways.

First, Plaintiffs do not have standing to bring claims against products they did not purchase. Sicario alleges she purchased the Vanilla Slate Ultra Protein Shake, while Schulman alleges she purchased the Classic Chocolate Slate Protein Shake. They do not have standing as to any of the other products identified in the Complaint.

Second, Plaintiffs cannot state any state law claims regarding the products' protein content without plausibly alleging that the products are misbranded under the Federal Food, Drug, and Cosmetic Act ("FDCA"). They fail to allege facts – as opposed to mere legal conclusions – plausibly establishing that the products' protein content is misbranded under the FDCA.

Third, Plaintiffs do not allege that their legal remedies are inadequate. Therefore, they fail to state any claim for equitable restitution.

### II.    BACKGROUND

#### A.    Plaintiffs' Alleged Purchases.

Slate manufactures and sells a variety of Slate Protein Milk Shakes, which are labeled as containing 20 grams of protein, and Slate Ultra Protein Milk Shakes, which are labeled as containing 30 grams of protein. (ECF No. 1, Compl., p. 1 & ¶ 21.) The Complaint identifies six Slate Protein beverage products: Dark Chocolate; Mocha Latte; Classic Chocolate; Vanilla Latte; French Vanilla; and Caramel Latte. (*Id.* ¶¶ 22 – 23.) The Complaint identifies four Ultra Protein Milk Shake products: Cookies & Cream;

Chocolate; Salted Caramel; and Vanilla. (*Id.* ¶ 23.)

Sicairos alleges that, in September 2025, she purchased the Vanilla Ultra Protein Milk Shake product from Target.com. (*Id.* ¶ 19.)[1] Schulman alleges that, in January 2024, she purchased the Classic Chocolate Slate Protein Milk Shake product from a Bristol Farms Market in Westchester, California.

### B. The FDA's Regulatory Structure.

The FDA comprehensively regulates food labeling, including the quantitative amounts of nutrients listed on the labeling, pursuant to the FDCA, 21 U.S.C. §§ 301, et seq., as amended by the Nutrition Labeling and Education Act, ("NLEA"), P.L. 101-535, 104 Stat. 2353. Under the FDCA, a food's label must display certain nutritional information, including the amount of protein in the food. 21 C.F.R. 101.9(c)(7). Relevant here, the label must state "the number of grams of protein in a serving, expressed to the nearest gram." *Id.* The protein content may be calculated as determined by the appropriate method of analysis as given in the "Official Methods of Analysis of the AOAC International." *Id.*

The FDA mandates a "12-subsample" composite process for testing products for quantitative nutrient content, including protein. *See* 21 C.F.R. § 101.9(g)(2). "The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases to be representative of a lot." *Id.* Compliance "shall be determined" by this composite of 12 subsamples. *Id.*

Furthermore, the FDA establishes two classes of nutrients for purposes of compliance. "Class I" nutrients refer to nutrients "in fortified or fabricated foods", while "Class II" nutrients refer to "[n]aturally occurring (indigenous) nutrients." 21 C.F.R. § 101.9(g)(3). More specifically:

When a nutrient is naturally occurring (indigenous) in a food or an ingredient that is added to a food, the total amount of such nutrient in the

---

[1] Sicairos alleges she "believes" she purchased other Slate products at unidentified times but does not identify which ones. (Compl. ¶ 19.)

final food product is subject to class II requirements, except that when an exogenous source of the nutrient is also added to the final food product, the total amount of the nutrient in the final food product (indigenous and exogenous) is subject to class I requirements.

*Id.* § 101.9(g)(3)(ii). If the protein "meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id.* § 101.9(g)(4)(i). But if the protein meets the definition of a Class II nutrient, "the nutrient content of the composite must be at least equal to 80 percent of the value for that nutrient declared on the label. *Provided*, That no regulatory action will be based on a determination of a nutrient value that falls below this level by a factor less than the variability generally recognized for the analytical method used in that food at the level involved." *Id.* § 101.9(g)(4)(ii). Thus, if the protein is a Class II nutrient, the product complies so long as its protein content is within 20 percent of the amount declared on the label (and that 20 percent safe harbor is further increased by the generally recognized variability for the analytical method used to determine the protein content).

To ensure uniform national nutrition labeling, the FDCA preempts state laws that "directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical" to the FDCA's nutrition labeling requirements. 21 U.S.C. § 343-1(a)(4). Thus, private plaintiffs may bring only actions to enforce violations of state laws imposing requirements *identical* to those contained in the FDCA. *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1098 (9th Cir. 2025).

The Complaint does not allege that Plaintiffs tested any of the 10 different Slate products pursuant to the 12-subsamples composite process. Instead, Plaintiffs merely allege that, on or about October 9, 2025, an independent lab tested the following products (using the AOAC Method 992.15) with the following results:

| PRODUCT | STATED PROTEIN (grams) | ACTUAL PROTEIN (grams) | % SHORTFALL |
|---|---|---|---|
| Slate Protein Shake – Dark Chocolate | 20 | 18.3 | 8.50% |
| Slate Protein Shake – Dark Chocolate | 20 | 18.2 | 9% |
| Slate Protein – Mocha Latte | 20 | 17.8 | 11% |
| Slate Protein – Mocha Latte | 20 | 17.5 | 12.50% |
| Slate Protein Shake – Classic Chocolate | 20 | 16.3 | 18.50% |
| Slate Protein Shake – Classic Chocolate | 20 | 15.7 | 21.50% |

(Compl., ¶ 22.) Plaintiffs do not allege that this testing involved any more than the two units of each of the products listed in the above table. They also do not allege the "variability generally recognized" for the AOAC Method 992.15. *See* 21 C.F.R. § 101.9(g)(4)(ii).

Plaintiffs allege that, on or about October 30, 2025, the same lab tested the following products (using the AOAC Method 992.15) with the following results:

| PRODUCT | STATED PROTEIN (grams) | ACTUAL PROTEIN (grams) | % SHORTFALL |
|---|---|---|---|
| Slate Protein Shake – Dark Chocolate | 20 | 18.3 | 8.50% |
| Slate Protein Shake – Dark Chocolate | 20 | 18.2 | 9.00% |
| Slate Protein – Mocha Latte | 20 | 17.8 | 11.00% |
| Slate Protein – Mocha Latte | 20 | 17.5 | 12.50% |
| Slate Protein Shake – Classic Chocolate | 20 | 16.3 | 18.50% |
| Slate Protein Shake – Classic Chocolate | 20 | 15.7 | 21.50% |

| | | | |
|---|---|---|---|
| Slate Protein – Vanilla Latte | 20 | 19.8 | 1.00% |
| Slate Protein – Vanilla Latte | 20 | 19.9 | 0.50% |
| Slate Protein Shake – French Vanilla | 20 | 17.2 | 14.00% |
| Slate Protein Shake – French Vanilla | 20 | 17.4 | 13.00% |
| Slate Protein Shake – Caramel Latte | 20 | 17.6 | 12.00% |
| Slate Protein Shake – Caramel Latte | 20 | 17.5 | 12.50% |
| Slate Protein Shake – Classic Chocolate | 20 | 19.8 | 1.00% |
| Slate Protein Shake – Classic Chocolate | 20 | 19.8 | 1.00% |
| Slate Ultra Protein – Cookies & Cream | 30 | 25.8 | 14.00% |
| Slate Ultra Protein – Cookies & Cream | 30 | 25.8 | 14.00% |
| Slate Ultra Protein – Chocolate | 30 | 29.3 | 2.33% |
| Slate Ultra Protein – Chocolate | 30 | 29.3 | 2.33% |
| Slate Ultra Protein – Salted Caramel | 30 | 29.5 | 1.67% |
| Slate Ultra Protein – Salted Caramel | 30 | 29.7 | 1.00% |
| Slate Ultra Protein – Vanilla | 30 | 27.6 | 8.00% |
| Slate Ultra Protein – Vanilla | 30 | 27.6 | 8.00% |

(*Id.* ¶ 23.) Again, they do not allege that any of this testing was done pursuant to the 12-subsamples composite process, and they do not allege the variability generally accepted for the testing method used.

Although Plaintiffs do not allege any testing pursuant to the FDA-mandated 12-subsamples composite process, if the protein in the products is a Class II nutrient, then almost all of Plaintiffs' own alleged test results are within the 20 percent safe harbor set forth in 21 C.F.R. § 101.9(g)(4)(ii). In fact, *all* the alleged test results for the Slate Ultra Protein products are within the 20 percent safe harbor. (*See* Compl. ¶¶ 22, 23.) With respect to the Slate Protein products, the only test results that Plaintiffs claim had a purported "shortfall" of greater than 20 percent were two results for the Classic Chocolate

Slate Protein Shake. (*Id.*)[2] Plaintiffs allege those two tests reflected a 21.50% shortfall, but they mistakenly ignore the federal regulation's mandate that the nutrient value be rounded to the nearest gram. 21 C.F.R. § 101.9(c)(7). When the alleged 15.7 grams results for the Classic Chocolate are rounded to the nearest gram (i.e., 16 grams), they too fall within the 20 percent safe harbor. What's more, even without the mandated rounding, those two results would be only 1.5 percent beyond the safe harbor, and yet the Complaint does not contain any allegation regarding the variability generally accepted for the test method used (21 C.F.R. § 101.9(g)(4)(ii), making it entirely speculative whether the alleged 1.5 percent variance (even without rounding to the nearest gram) is within or without the generally accepted variance for the test method.[3]

Furthermore, even assuming the protein in the Products was a Class I nutrient—a proposition for which Plaintiffs allege only a legal conclusion (more on that later)—many of Plaintiffs' own alleged results are compliant. When rounded to the nearest gram as mandated by 21 C.F.R. § 101.9(c)(7), both Vanilla Latte results (19.8 grams and 19.9 grams) and two Classic Chocolate Slate Protein Shake results (19.8 grams and 19.8 grams) meet the 20 grams protein declared on the label. (*See* Compl. ¶¶ 22 – 23.), And, when rounded to the nearest gram, both of the Salted Caramel Slate Ultra Protein test results (29.5 grams and 29.7 grams) meet the 30 grams protein declared on the label. (*See id.* ¶ 23.)

## C.    Plaintiffs' Claims

Plaintiffs assert claims for violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), unjust enrichment, breach of express

---

[2] The Complaint alleges six test results for the Classic Chocolate but never alleges how many different *units* were tested. It appears that, at most, only four units were tested, because the alleged "follow-up" testing on October 30, 2025, reported to Classic Chocolate test results that were identical to those reported on October 9, 2025. (Compl. ¶¶ 22 – 23.) In fact, the first six test results in the table in paragraph 23 of the Complaint appear to be a cut-and-paste of the table in paragraph 22, meaning either that this was a pleading error or that the exact same units were tested a second time.
[3] Also, Plaintiffs allege two other test results for Classic Chocolate that would be compliant for Class I nutrients. (*See* Compl. ¶ 23 [alleging two units of Classic Chocolate that tested at 19.8 grams of protein, which rounds to 20 g].)

warranty, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"), and violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. ("FAL"). Plaintiffs bring their claims individually and on behalf of a putative class of "[a]ll consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint." (*Id.* ¶ 38.)

## III.  LEGAL STANDARDS

The court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8, 12(b)(6). Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Allegations that are merely consistent with liability do not suffice. *Id.* Allegations showing merely a "possibility" that a defendant has acted unlawfully do not meet Rule 8's requirements. *Id.*

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted).

Claims sounding in fraud must also meet Rule 9(b)'s particularity requirements. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009); *Watkins v. MGA Entertainment, Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021). The plaintiff must identify with particularity the circumstances constituting the allegedly fraudulent conduct—i.e., the who, what, when, where and how of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs' claims are all based on the same theory of false and misleading advertising and, thus, are

governed by Rule 9(b). *Kearns,* 567 F.3d at 1125 (Rule 9(b)'s heightened pleading standard applies to CLRA and UCL claims based on alleged misrepresentations); *Marks v. United Parks & Resorts, Inc.*, No. 2025 WL 2767941, at *11 (S.D. Cal. Sept. 26, 2025) (breach of express warranty); *Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 WL 1406608, at *3 (C.D. Cal. Mar. 19, 2018) (express warranty and unjust enrichment).

When ruling on a Rule 12 motion, a court may look beyond the pleadings at documents incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007); *accord Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotations and citation omitted). This includes the complete product labeling. *See, e.g., Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 903 n.7 (N.D. Cal. 2012) (product label properly considered "because it is referenced in the complaint"); *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 882-883 (C.D. Cal. 2013) (same).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Have Standing to Assert Claims Regarding Products They Do Not Allege to Have Purchased.

Plaintiffs do not have standing to bring any claims regarding the products they did not purchase. Schulman alleges she purchased only the Classic Chocolate Slate Protein Milk Shake product. (Compl. ¶ 20.) She does not allege that she purchased any other variety of the Slate Protein Milk Shake products or that she purchased any Ultra Protein Milk Shakes.

Sicairos alleges she purchased the Vanilla Ultra Protein Milk Shake. (*Id.* ¶ 19.) She alleges she "believes" she purchased some other unidentified products at unidentified times, but those allegations do not meet Rule 9(b)'s requirement of alleging with *particularity* the what, when, and where of such possible transactions. *See Vess*, 317 F.3d at 1106.[4]

---

[4] As discussed in Section III, above, Plaintiffs' claims are subject to Rule 9(b).

1    Under Article III, a federal court may resolve only a real controversy with real

2  impact on real persons. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Article

3  III standing "is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

4  The standing requirement applies to each claim and each remedy sought. *Davis v. Fed.*

5  *Election Comm'n*, 554 U.S. 724, 734 (2008). That a suit may be a class action "adds

6  nothing to the question of standing, for even named plaintiffs who represent a class 'must

7  allege and show that they personally have been injured, not that injury has been suffered

8  by other, unidentified members of the class to which they belong and which they purport

9  to represent.'" *Id.* at 357 (internal citations omitted).

10    "There is a split in authority among district courts in the Ninth Circuit [regarding]

11  whether plaintiffs have Article III standing to bring claims for products they did not

12  personally purchase but that were purchased by unnamed class members." *Oh v. Fresh*

13  *Bellies, Inc.*, No. CV 24-5417, 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024). Some

14  courts dismiss claims regarding non-purchased products for lack of standing. *See, e.g.,*

15  *Ringler v. J.M. Smucker Company*, 783 F. Supp. 3d 1229, 1246 (C.D. Cal. 2025)

16  ("Plaintiff bought only one of the Products named in the Complaint[.] She, therefore, did

17  not suffer any injury related to the other Products mentioned in the Complaint."); *Oh*,

18  2024 WL 4500727, at *4; *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908-09 (C.D.

19  Cal. 2021); *Valenta v. Naked Whey, Inc.*, No. 25-cv-1543-RSH-DEB, 2025 WL 3240806,

20  at *3 (S.D. Cal. Nov. 20, 2025). Other courts have permitted plaintiffs to bring claims for

21  products they did not purchase so long as the product and alleged misrepresentations are

22  "substantially similar." *See Clevenger v. Welch Foods Inc.*, No. SACV 20-01859-CJC,

23  2022 WL 16964009, at *4 (C.D. Cal. Feb. 25, 2022) (collecting cases).

24    This Court should join the courts finding no standing for claims regarding products

25  not purchased. The "substantial similarity" analysis is "inconsistent with the basic concept

26  of standing." *Lorentzen*, 532 F. Supp. 3d at 908. "The similarity of a product, by itself,

27  says nothing about whether a party suffered an injury traceable to the allegedly wrongful

28  conduct of another." *Id.* at 909. An unnamed proposed class member's purchase of some

other product is not an invasion of the *plaintiff's* own legally protected interest. *Oh*, 2024 WL 4500727, at *4 (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Schulman does not claim to have purchased any product other than the Classic Chocolate Slate Protein Shake. She lacks standing to assert any claims as to any other products identified in the Complaint, and the Court should dismiss all claims by Schulman as to the unpurchased products. Similarly, Sicairos does not adequately allege under Rule 9(b) that she purchased any product other than the Vanilla Ultra Protein Milk Shake. The Court should dismiss all claims by Sicairos as to any other products. *See Lorentzen*, 532 F. Supp. 3d at 909 (dismissing all claims as to products not purchased); *Oh*, 2024 WL 4500727, at *9 (same).

> **B.    Plaintiffs Fail to Plausibly Allege that the Products Misbranded are Under the FDCA.**

The "reasonable consumer" standard governs Plaintiffs' state-law UCL, FAL, and CLRA claims. *Chapman v. Skype*, 220 Cal. App. 4th 217, 230 (2013); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Where breach of warranty and unjust enrichment claims regarding allegedly false advertising are based on the same theory as the CLRA, UCL, and FAL claims, they are subject to the same standard. *See Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) (affirming dismissal of warranty claims premised on "the exact same representations as her consumer protection claim"); *McConnon v. Kroger Co.*, No. 2:24-cv-02601-SB-E, 2024 WL 3941340, at *4 (C.D. Cal. June 21, 2024) (same); *Lee v. Nature's Path Food, Inc.*, No. 23-cv-00751-H-MSB, 2023 WL 7434963, at *5 (S.D. Cal. Nov. 9, 2023) (same).

However, because the FDCA preempts any state law claims unless they impose requirements *identical* to those contained in the FDCA, the Ninth Circuit has held that in order to avoid federal preemption at the pleading stage with respect to state law claims that a food product's labeling misstates the product's nutrient content, a plaintiff must plead facts sufficient to allow a court reasonably to infer that the product "is not only mislabeled under state law, but also misbranded under the [FDCA]." *Scheibe v. ProSupps*

*USA, LLC*, 141 F.4th 1094, 1099 (9th Cir. 2025). Thus, the plaintiff must allege facts sufficient to allow a court to draw a reasonable inference "that testing a composite sample according to FDA regulations" would show that the product "is misbranded under the [FDCA]." *Id.* Here, for several reasons, Plaintiffs fail to allege facts sufficient for the Court to draw any such reasonable inference.[5]

### 1. Plaintiffs do not plead factual content supporting their legal conclusion that the protein in the Products is a "Class I" nutrient.

The first reason Plaintiffs have failed to plead facts plausibly alleging that the Products are misbranded under the FDCA is that they plead no facts supporting their mere legal conclusion that the protein in the Products is a "Class I" nutrient under the FDCA. As explained in Section II.B, *supra*, if the nutrient in the product is a Class I nutrient, the nutrient content, rounded to the nearest gram, must be equal to at least the value for that nutrient declared on the label. 21 C.F.R. § 101.9(c)(7), (g)(4)(i). But if the nutrient is "Class II"—meaning it is indigenous "in a food or an ingredient added to a food"—it is subject to the 20 percent safe harbor. *Id.* § 101.9(g)(3)(ii), g(4)(ii). The Complaint pleads merely the boilerplate conclusion that "the Products are 'Class I' foods as defined in 21 C.F.R. § 101.9(g)(3)." There are no factual allegations to support that legal conclusion. The Supreme Court has held that courts do not accept "legal conclusions," "labels and conclusions" or a "naked assertion" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *accord Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) ("Plausibility requires pleading facts, as opposed to conclusory allegations" and "must rise above the mere conceivability or possibility of unlawful conduct").

Unlike the Complaint, the federal regulations do not refer to Class I "foods", but rather to Class I or Class II "nutrients." 21 C.F.R. § 101.9(g)(3)(ii). As noted, if the nutrient (in this case, protein) "is naturally occurring (indigenous) in a food *or an*

---

[5] As noted, Slate stands behind its protein content claims and does not accept Plaintiffs' alleged test results for any purpose of than this Rule 12(b) motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SLATE CRAFT
GOODS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*ingredient that is added to a food*," the nutrient is Class II. *Id.* (emphasis added). Here, Plaintiffs do not allege that there is any source of protein in the Products other than ultrafiltered skim milk (see Decl. of Manny Lubin, Exs. 1 and 2), and the Complaint does not contain any factual allegations that the protein is not indigenous to the skim milk. There is no allegation that protein is *added* to the skim milk or is exogenous to the skim milk. There is also no allegation that the skim milk's whey-to-casein ration has been altered in any way. Plaintiffs fail to allege facts plausibly showing that the protein in the Products is a Class I nutrient.

This is fatal to Plaintiffs' claims. Schulman allegedly purchased only the Classic Chocolate Slate Protein Shake. (Compl. ¶ 20.) As explained in Section II.B, above, all the Classic Chocolate test results are within the 20 percent safe harbor for Class II nutrients.

Sicairos adequately alleges only the purchase of the Vanilla Ultra Protein Shake. (*Id.* ¶ 19.) The Complaint does not allege that the unit she purchased was one of those tested, but regardless, the two test results alleged in the Complaint for the Vanilla Ultra Protein Shake are both well within the 20 percent safe harbor for Class II nutrients. (*Id.* ¶ 23.)

Because Plaintiffs have failed to allege facts plausibly showing the protein is a Class I nutrient, they have failed to plead facts sufficient to allow the Court to reasonably infer that the products they allegedly purchased were "misbranded under the [FDCA]." *Scheibe*, 141 F.4th at 1099. All their claims are preempted and fail as a matter of law.

### 2. Plaintiff Schulman does not plausibly allege that the product she purchased (Classic Chocolate) was misbranded.

While all of Plaintiffs' claims fail because they have not plausibly alleged the protein in the Products is a Class I nutrient, Schulman's claims fail for an additional reason.

Even assuming arguendo that the protein in the Classic Chocolate Slate Protein Shake is a Class I nutrient, Schulman has not pled facts sufficient to permit the Court to

reasonably infer that "testing a composite sample according to FDA regulations" would show that the product she allegedly purchased was misbranded under the FDCA. *Scheibe*, 141 F.4th at 1099. First, Schulman does not allege that the laboratory conducted any 12-subsamples composite testing on the Classic Chocolate Slate Protein Shake. Second, she alleges that two tests of the Classic Chocolate product resulted in a fully compliant 20 grams of protein (i.e., 19.8 rounded to the nearest gram). In light of that allegation, the Court cannot reasonably infer that, if subjected to the FDA-required 12-subsamples composite testing, the Classic Chocolate product that Schulman purchased would be misbranded. Considering that two of her own alleged test results for Classic Chocolate were fully compliant under Class I standards, any conclusion that the product would be misbranded if subjected to 12-subsample testing would not be a reasonable inference but rather sheer speculation. Allegations showing merely a "possibility" that a defendant has acted unlawfully do not meet Rule 8's requirements. *Iqbal*, 556 U.S. at 678.

Schulman's allegations stand in sharp contrast to those found sufficient in *Scheibe*. In *Scheibe*, the product label at issue claimed the product contained zero grams of carbohydrates and zero calories. 141 F.4th at 1097. The plaintiff alleged that he tested the product "using the FDA's testing methods, but not that he used the FDA's sampling process." *Id.* He alleged that his testing found the supplement contained 5.68 grams of carbohydrates and 51 calories per serving, "*far exceeding* the FDA's allowable margins for zero-carbohydrate and zero-calorie labeling." *Id.* (emphasis added). The plaintiff in *Scheibe* did not allege any compliant test results. Considering the carbohydrates and calories far exceeded zero (the label claim), the Ninth Circuit found that a court could reasonably infer that if 12-subsamples of the product were submitted to composite testing, the product would be misbranded. *Id.* at 1099-1100.

Here, by contrast, Schulman alleges two test results for Classic Chocolate that would be compliant for a Class I nutrient (19.8 grams and 19.8 grams, which round to 20 grams). (Compl. ¶ 23.) While she alleges two other test results that were lower (16.3 grams and 15.7 grams), she does not allege that those were from the same lot as the 19.8

grams results, nor does she allege what lot *her* purchase was from. *See* 21 C.F.R. §
101.9(g)(2) (the 12 subsamples are to be "representative of a lot"). She merely asks the
Court to speculate that the Classic Chocolate product she purchased *might* have been
misbranded under the FDCA. For this additional reason, Schulman has failed to plead
facts permitting the Court to "draw a reasonable inference" that the product she purchased
was misbranded under the FDCA. *Scheibe*, 141 F.4th at 1099. Her claims all fail as a
matter of law.

### 3. Plaintiffs do not allege any plausible claims regarding the Vanilla Latte and Salted Caramel Products.

As explained in Section IV.A, above, Plaintiffs do not have standing to pursue
claims as to the products they did not purchase. But even assuming otherwise, they do
not plausibly allege any claims as to the Vanilla Latte product or the Salted Caramel Slate
Ultra Protein Shake. Plaintiffs allege two test results for Vanilla Latte: 19.8 grams and
19.9 grams, which both round to 20 grams, the amount Plaintiffs allege is stated on the
label. (Compl. ¶ 23.) Likewise, Plaintiffs allege two test results for Salted Caramel: 29.5
grams and 29.7 grams, which both round to 30 grams, the amount they allege is stated on
the label. (*Id.*) Obviously, they have failed to allege any facts from which the Court could
infer any unlawful conduct with respect to those two products.

### C. Plaintiffs Fail to State any Claim for Equitable Restitution Because They Fail to Plead Facts Establishing Their Legal Remedies Are Inadequate.[6]

UCL and FAL claims are equitable claims providing only equitable remedies—i.e.,
an injunction and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th
1134, 1144 (2003); *Bank of the West v. Sup. Ct. (Industrial Indem. Co.)*, 2 Cal.4th 1254,
1266 (1992). Plaintiffs seek equitable restitution under their UCL, FAL, and unjust
enrichment causes of action. (*See* Compl., ¶¶ 72 – 73 [unjust enrichment], 87, 95, and 110

---

[6] This argument is directed to Plaintiffs' claims for equitable restitution, not injunctive
relief.

[seeking "all" relief allowed under the UCL and FAL], & p. 19:27-28.) But before Plaintiffs can avail themselves of a federal court's equitable jurisdiction, they must demonstrate that they lack an adequate remedy at law. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105-06 (1945); *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 842-44 (9th Cir. 2020). Both Supreme Court and Ninth Circuit case law require a plaintiff to *plead* facts establishing legal remedies are inadequate. *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not allege "the inadequacy of remedies at law"); *Sonner*, 971 F.3d at 844 ("[T]he operative complaint does not allege that Sonner lacks an adequate legal remedy."); *accord Gradney v. Polar Beverages,* 797 F. Supp. 3d 1016, 1027 (N.D. Cal. 2025); *Gonzalez v. Chattem, Inc.*, No. 23-cv-00102-HSG, 2023 WL 8101923, at *9 (N.D. Cal. Nov. 21, 2023);

The CLRA provides for legal remedies (money damages). Cal. Civ. Code §§ 1781. Plaintiffs acknowledge this available legal remedy by alleging their intent to give CLRA notice pursuant to Cal. Civ. Code § 1782. (Compl. ¶ 64.) Damages are also an available remedy for breach of express warranty. Cal. Comm. Code § 2714. Plaintiffs fail to allege any facts plausibly establishing that their legal remedies are inadequate.

In *Sonner*, another food-labeling class action, the court held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d at 843-44. There, the plaintiff brought claims for restitution under the CLRA but also had a claim for money damages available under the CLRA. *Id.* at 838. The court dismissed the claims for restitution because plaintiff had an adequate legal remedy—namely, a CLRA damages claim. The Ninth Circuit affirmed, holding the plaintiff had failed to plead how an award of damages under the CLRA would be inadequate in any way compared to restitution. *Id.* at 844. The Ninth Circuit also has rejected the notion that *Sonner*'s outcome somehow depended on its procedural posture. *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) ("Nothing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had

- 15 -

voluntarily dismissed a damage claim to avoid a jury trial.").

Plaintiffs' CLRA and breach of express warranty claims are based on the same alleged conduct and theory as the equitable claims for restitution—namely, Plaintiffs' allegations that Slate misrepresented the Products' protein content and, had they known, they would not have purchased the Products or would "have only been willing to pay a substantially reduced price." (Compl. ¶ 30.) While Plaintiffs plead several *legal conclusions*, they do not plead any factual content which, if true, would show that an award of damages would not be an adequate remedy.

For example, Plaintiffs allege that they have inadequate remedies because it may prove more difficult to receive a full refund under their legal claims than under their equitable claims. *See id.* at ¶ 34. This conclusory allegation suffers from multiple defects. First, to receive a full refund as either restitution or damages, the plaintiff must show the "product had no value to [the consumer]." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) (restitution); *Rosenwald v. Kimberly -Clark Corp.*, 152 F.4th 1167, 1178 (9th Cir. 2025) (rejecting full refund as damages for failure to show that product had no value). The Complaint does not include any plausible allegation that the Products here are worthless. Instead, Plaintiffs merely allege that the Products contained protein "shortfalls averaging about 13.5% across all flavors tested." (Compl. ¶ 22.) By Plaintiffs' own allegations, the Products still provided anywhere from 16 g to 30 g of protein. The Products also provided calories and vitamins. (Lubin Decl., Exs. 1 and 2.) Rule 8 requires *plausible* factual allegations. Plaintiffs' incorrect legal conclusion that it might be easier to obtain a full refund as restitution than damages is not plausible factual content. *See LeGrand v. Abbott Labs.*, No. 22-cv-05815-TSH, 2025 WL 2323352, at *11 (N.D. Cal. Aug. 12, 2025) (full refund theory is not available where the challenged product "contained nutrition in the form of protein, calories, and vitamins"). The Ninth Circuit "already determined in *Sonner* that the availability of a CLRA claim for damages precludes a UCL claim for equitable relief in federal court." *Guzman*, 49 F.4th at 1313 n.2.

Second, Plaintiffs' ability to prevail on their legal claims is irrelevant to whether

1    their legal remedies are inadequate. "In the Ninth Circuit, the relevant test is whether an

2    adequate damages remedy is available, not whether the plaintiff elects to pursue it, *or*

3    *whether she will be successful in that pursuit*." *Mullins v. Premier Nutrition Corp.*, No. 13-

4    cv-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018), *aff'd sub nom*, *Sonner v.*

5    *Premier Nutition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (emphasis added); *Rhynes v.*

6    *Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011)

7    ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims

8    fail is unavailing. Where the claims pleaded by a plaintiff *may* entitle her to an adequate

9    remedy at law, equitable relief is unavailable."); *Axelrod v. Lenovo (United States) Inc.*,

10   No. 21-cv-06770-JSW, 2022 WL 976971, at *3 (N.D. Cal. Mar. 31, 2022) (dismissing

11   equitable claims where plaintiff claimed legal remedies were inadequate because "it will

12   be harder to prove their legal claims"). Plaintiffs' legal and equitable claims are based on

13   the same theory of allegedly false advertising; potential differences in proof do not make

14   the legal remedy inadequate. *See In re: Qualcomm Antitrust Litigation*, No. 17-md-02773-

15   JSC, 2023 WL 6301063, at *8 (N.D. Cal. Sept. 26, 2023) ("failure of proof does not make

16   the legal remedy inadequate"); *Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL,

17   2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024) (explaining that the Ninth Circuit's

18   emphasis in *Guzman v. Polaris Industries, Inc.*, 49 F.4th 1308 (9th Cir. 2022), "on the

19   relief that could possibly be afforded under a claim, as opposed to possible hurdles the

20   plaintiff might face in achieving that relief, indicates that mere differences in proof between

21   claims does not make a legal remedy inadequate" (internal quotation and citation omitted)).

22   In *Sonner*, the plaintiff also sought a full refund and the court held that she failed to allege

23   her legal remedies were inadequate. *Sonner*, 971 F.3d at 845.[7]

24        Plaintiff also cannot plead inadequate legal remedies by alleging that the "CLRA

25   requires additional showings not required under equitable causes of action." *See* FAC

---

[7] Also, even assuming there was a difference in the measure of damages versus restitution,
that would not mean the legal remedy is inadequate. *See Wright v. Old Gringo, Inc.*, No.
23-55791, 2025 WL 1912362, at *2 (9th Cir. May 23, 2025) ("That Wright's fraud claims
only permitted 'out-of-pocket' damages, rather than 'benefit-of-the-bargain' damages,
does not mean that her legal remedy was inadequate").

¶¶ 69-70. As courts have continuously recognized, that a legal and equitable claim may contain distinct elements or cover different conduct is irrelevant unless the Plaintiff can "differentiate the facts that support their claims" under the different theories. *Axelrod*, 2022 WL 976971, at \*3; *accord Gradney*, 797 F. Supp. 3d at 1027 - 1029. For example, in *Gradney*, the Plaintiff claimed that the use of the phrase "100% Natural" on a flavored seltzer water label was false because the product contained synthetic ingredients. *Gradney*, 797 F. Supp. 3d at 1019. The plaintiff brought legal claims as well as equitable claims under California's Unfair Competition Law ("UCL"), including a claim under the UCL "unfair" prong. *Id.* at 1020. The plaintiff alleged that his legal claims were inadequate because the equitable claims (in particular, the UCL "unfair' claim) "covers a broader scope of actionable conduct." *Id.* at 1028. The court rejected this argument, recognizing that even if in theory the equitable and legal claims could cover different conduct, that argument "would seem to have little traction in the instant case given the facts alleged." *Id.* at 1029. The court recognized that the plaintiff's "unfair" theory—as was true of the plaintiff's legal theories—required that "there would have to be something misleading about the '100% Natural' label in order for it to be deemed 'unfair.'" *Id.* The Court dismissed the equitable claims for failure to allege that legal remedies are inadequate. *See id.*

For the same reason, Plaintiffs' conclusory, formulaic allegations that "winning damages under the CLRA requires additional showings not required under equitable causes of action" and that "Plaintiffs' common law claims require additional showings, compared to his equitable claims" do not constitute factual allegations plausibly establishing that their legal remedies are inadequate. (Compl. ¶¶ 35-36.) Just as in *Gradney*, Plaintiffs' only alleged basis for their equitable claims (including their UCL "unfair"-prong claim) is that the protein claims on the Products' labels are misleading. (*Id.* ¶ 68, 86, 94, 102.) That is the same basis as his legal claims.

Finally, Plaintiffs' allegation that their legal remedies "are not equally prompt or otherwise efficient" is not only a boilerplate legal conclusion, but one that doesn't even

make sense. (Compl. ¶ 37.) "[W]here there are issues common to both the equitable and legal claims, 'the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims.'" *Dollar Systems, Inc. v. Avacar Leasing Systems, Inc.*, 890 F.2d 167, 170 (9th Cir. 1989) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962)). Slate has a right to jury trial on the legal claims, which must be resolved *before* Plaintiff's equitable claims.

For all the foregoing reasons, the Court should dismiss all claims for equitable restitution.

## V.    CONCLUSION

The Court should grant the Motion to Dismiss in its entirety.

Dated:  January 9, 2026                          **AMIN WASSERMAN GURNANI, LLP**


                                                 **/s/ *William P. Cole***
                                                 William P. Cole

                                                 *Attorneys for Defendant*


The undersigned, counsel for record for Defendant Slate Craft Goods, Inc., certifies that this brief contains 6331 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 9, 2026                          */s/ William P. Cole*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SLATE CRAFT GOODS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1
2

## <u>CERTIFICATE OF SERVICE</u>
(United States District Court)

3

4    I hereby certify that on the 9th day of January, 2026, I caused the electronic filing

of the foregoing document, through the CM/ECF system. The aforementioned document

5
6    will be sent electronically to the registered participants as identified on the Notice of

7    Electronic Filing and paper copies will be sent to those indicated as non-registered

8    participants.

9

10

11    /s/*William P. Cole*
William P. Cole

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SLATE
CRAFT GOODS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT